# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUSSELL D. BRACEWELL, | ) | 1:08cv0423 GSA |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **BACKGROUND**

Plaintiff Russell D. Bracewell ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On July 25, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

1 **FACTS AND PRIOR PROCEEDINGS[2]**

On or about August 31, 2004, Plaintiff filed applications alleging disability since March 18, 2004, due primarily to Hepatitis-C and liver disease.[3] AR 43-45. His application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 11-14, 34-39. ALJ Mark C. Ramsey held a hearing on October 17, 2006, and issued an order denying benefits on May 24, 2007. AR 15-19, 226-259. On January 19, 2008, the Appeals Council denied review. AR 5-7.

Hearing Testimony

ALJ Ramsey held a hearing on October 17, 2006, in Chico, California. Plaintiff appeared and was represented by Shirley Hull. AR 226.

Plaintiff testified that he was divorced. He currently lives with his girlfriend of six years in a trailer home in Chico. His girlfriend is disabled as a result of grand mal seizures. AR 229.

Plaintiff graduated high school and attended one year of college. He served time in the Air Force and received an honorable discharge in July 1975. AR 229-230. Thereafter, he worked in the construction industry. AR 230-231. Plaintiff also worked stocking shelves at K-Mart, where he had been employed part-time for about one year. AR 232-233. Plaintiff was fired from K-Mart for having alcohol on his breath. AR 250-251.

Most recently in the construction field, Plaintiff worked at Cousin Gary's pulling the plastic sheeting off of mobile homes following transport. He quit working at Cousin Gary's after he nearly fell from a roof in the 100 degree heat. AR 233. From September 2004 to February or March 2005, Plaintiff worked for Premier Construction part-time as a carpenter. He just could not work any longer in such a labor-intensive job. AR 234, 242-243. He was tired after an hour or two, and the pain in his legs and back precluded him from continuing. AR 243. Plaintiff also

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] March 19, 2004, appears in the record; however, the ALJ's decision reflects "March of 2005" as the date of onset of disability. At the administrative hearing, Plaintiff explained that he filed a previous application in 2003 but then "dropped it" when he went to work for Premier. After leaving Premier, he filed for benefits again. See AR 254-256.

2

worked construction at Chico Nissan, but quit because he could not communicate with his supervisor who spoke Spanish, and whom apparently referred to Plaintiff derogatorily in Spanish when Plaintiff requested the supervisor speak English. AR 232, 252.

Plaintiff is currently receiving general assistance and food stamps, and assistance toward the space rental for his trailer. AR 234-235.

Plaintiff attends to his own personal needs. He occasionally changes the sheets on the bed, does his own laundry and cooks. He does the grocery shopping on a weekly basis and is usually accompanied by his mother and/or girlfriend. His girlfriend vacuums the carpets, mops the floors, scrubs the bathroom and mows the law. AR 235-236. Plaintiff does tend to a small vegetable garden where he grows jalapeno and Serrano chilies, and occasionally will trim the trees. AR 236-237.

Because he does not drive, Plaintiff gets around using a bicycle or taking the bus. He does not attend church, see movies, go fishing or camping, nor does he play sports or exercise. AR 237, 249.

Plaintiff currently takes Norco for pain, and the natural supplement Milk Thistle for his liver. AR 238, 246-247. He has had problems with alcohol for years. Plaintiff testified that the day previous to the hearing he drank a quart of beer, but that he hadn't had any alcohol for the week and a half prior to that date. He has been advised by his doctor that he should stop drinking because it is going to kill him. AR 239. He has not quit drinking completely, but he has cut down. Plaintiff attended AA meetings when his liver problems were significant, and that is how he was able to cut down on his alcohol consumption. He will "quit for a couple weeks and then just ke[ep] it down to a bare minimum." AR 240. He stopped taking Antabuse after one dose because it made him "deathly ill." AR 240-242. Plaintiff testified that he has tried to quit drinking, but he has been unable to do so. AR 249.

Plaintiff's doctor advised him that the pain in his back and legs was attributed to the Hepatitis C. He sees his physician, Dr. Kurt Johnson, regularly, about every month or two months. Dr. Johnson has been treating Plaintiff for more than ten years. AR 244-245. Plaintiff rated his pain at a five or six without medication, and a three with medication. AR 248. Plaintiff

3

has not undergone a liver biopsy, and understands his liver condition is monitored with blood testing. AR 248.

In response to a question by his attorney, Plaintiff indicated that he could perform the duties of a cashier, however, he could not stand for extended periods of time. AR 250. His typical day includes getting up, eating breakfast, and sitting down to watch television and plan his day. AR 250. He takes a nap every afternoon. AR 250.

Medical Record

The record consists of a number of treatment notes from Kurt Johnson, M.D., covering his treatment of Plaintiff for a period beginning July 10, 2002, and ending July 19, 2006. The notes indicate that Plaintiff received treatment for complaints regarding Hepatitis C and alcohol abuse, as well as pneumonia, sinusitis and a broken bone. AR 166-169, 193, 195-198, 201.

On January 4, 2004, Plaintiff sought treatment at the Enloe Medical Center for three to four days of body aches with worsening symptoms. He was diagnosed with and treated for bronchitis before being released. AR 153-155.

Plaintiff was seen again at the Enloe Medical Center on January 8, 2004, for complaints of weakness. He wanted blood work performed and complained of muscle tightness in the legs, knees and back. Plaintiff indicated he drank a quart of alcohol daily, despite having previous periods of sobriety for as long as six months. The notes indicate he smelled of alcohol but was not grossly intoxicated. Plaintiff declined a social service consultation for treatment of his alcoholism. He was diagnosed with and treated for alcoholic hepatitis, Hepatitis C and chronic alcoholism. AR 147-152.

On October 25, 2004, Plaintiff was again seen at Enloe Medical Center. He reported a cough and chest and nasal congestion, with sinus pressure, for a week's time. COPD was diagnosed on this occasion and Plaintiff was treated accordingly. AR 144-146.

On November 22, 2004, a comprehensive psychiatric examination was performed by Keith Whitten, M.D. Plaintiff's chief complaint was Hepatitis C and the fact that he was unable to work as a result of the condition. At the time of the examination, Plaintiff was working in construction but was concerned because he was weak and easily susceptible to illness. Plaintiff

indicated he was an alcoholic for as long as he could remember. He quit drinking when the liver pain increased, and has taken Antabuse to treat the alcoholism. However, he relapsed three or four months prior and admitted to drinking moderately since. When his liver swells or causes pain, he discontinues the use of alcohol. Plaintiff indicated he has five years sobriety from intravenous methamphetamine drug use. He stopped the street drug use when he suffered an episode of heat stroke. AR 124-126. While Plaintiff presented "somewhat sickly" and unshaven, he was pleasant, and alert and oriented to person, place and time. Concentration and memory were fair. His abstract thinking was intact, intelligence was within normal limits and judgment was fair. The DSM-IV diagnoses were alcohol abuse, methamphetamine abuse in remission, and hepatitis. AR 127. Dr. Whitten concluded that Plaintiff was "primarily limited by his physical problems" and the mental health issues had only a mild impact otherwise. AR 127-128.

On January 18, 2005, Plaintiff was seen for an internal medicine evaluation by John Tendall, M.D. He complained of fatigue and weakness, and alcoholism. Plaintiff indicated that he had been bothered by the fatigue and pain off and on since 2000. At that time, Plaintiff had been hospitalized for severe pneumonia and the Hepatitis C diagnosis was made as a result. Plaintiff indicated that he quit using methamphetamine years prior, but continued to drink alcohol. He has attempted alcohol rehabilitation several times, including twice in the previous year, but he cannot give up drinking completely. AR 131. Plaintiff indicated he smokes a pack of cigarettes a day and drinks two to three quarts of whiskey a day. AR 132. He was in pleasant mood, moved easily and indicated that "most of the time" he felt "okay." The examination revealed "a palpable liver in the right upper quadrant, slightly tender liver edge, and two firm respirable right costal margins." AR 132-133. Dr. Tendall diagnosed Hepatitis C, chronic alcoholism, and degenerative joint disease primarily in the left shoulder. The doctor opined that Plaintiff could stand and walk six hours in a workday, sit without limitation, could lift and carry twenty pounds frequently and fifty pounds occasionally, and had no postural limitations on bending, stooping or crouching. He had some limitation on reaching over his head on the left upper extremity. AR 134-135. A related January 19, 2005, hepatic function panel revealed elevated AST and ALT findings. AR 136.

On February 9, 2005, Plaintiff presented at Enloe Medical Center and complained of fever, back pain and chills. He was transported to the hospital by his girlfriend after refusing the ambulance. An x-ray showed "[m]oderately dense left basilar infiltrate" and Plaintiff was diagnosed with and treated for left lower lobe pneumonia, alcoholism and alcohol induced cirrhosis. AR 137-143.

A February 14, 2005, Physical Residual Functional Capacity Assessment completed by Dr. Sudhir Jaituni paralleled Dr. Tendall's assessment, with an additional limitation of occasional climbing and stooping. AR 155-162. The findings by Dr. Jaituni were affirmed by Dr. Mark Tambellini. AR 162.

On April 25, 2006, Dr. Johnson prepared forms entitled "Physical Residual Functional Capacity Questionnaire" and "Hepatitis C Residual Functional Capacity Questionnaire" in connection with his treatment of Plaintiff. Dr. Johnson indicated that Plaintiff had been his patient since 2000, and that he was seen for chronic fatigue, an enlarged liver, muscle and joint aches, difficulty concentrating, weakness, loss of appetite and weight loss. Dr. Johnson opined that Plaintiff may be capable of low stress jobs, could sit for two hours at a time, stand for one hour at a time, and could both sit and stand for about two hours out of an eight-hour workday. The doctor wrote in "Patient is not capable of working 8 hour work day." Dr. Johnson indicated that Plaintiff could frequently lift less than ten pounds, occasionally lift ten pounds, rarely lift twenty pounds, and never lift fifty pounds. He indicated Plaintiff could occasionally twist, stoop, crouch and climb ladders, but should rarely climb stairs. AR 217-220. With specific regard to Plaintiff's Hepatitis C condition, Dr. Johnson added that Plaintiff's prognosis was poor. AR 221-224.

In a June 19, 2006, single-page Medical Report prepared for Butte County Department of Employment and Social Services, Dr. Johnson indicated Plaintiff was permanently disabled due to chronic Hepatitis C, general fatigue, alcoholism and cellulitis. AR 194.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of pulmonary disease, Hepatitis C and alcoholism. It was noted that Plaintiff's Hepatitis C was asymptomatic. The

pulmonary disease was not accompanied by clinical signs or findings of severity. The ALJ also noted that Plaintiff suffered from alcohol abuse and liver damage. Nonetheless, the ALJ determined these severe impairments did not meet or equal any listing impairments so as to result in a disability finding. AR 16.

Based on his review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work. He could lift and carry ten (10) pounds frequently and twenty (20) pounds occasionally, without nonexertional limitations. AR 19.

Given this RFC, the ALJ found that Plaintiff could not return to his past work as a construction laborer as it requires a greater level of physical exertion. AR 18-19. Nevertheless, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy. Lastly, in considering vocational factors such as age, education and past work experience, the ALJ applied rule 202.14. Because Plaintiff was fifty-one years of age, with a high school education and one year of college, and no transferable work skills, it was determined that Plaintiff could perform the full range of light work. AR 18-19.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the

Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**<u>REVIEW</u>**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since March 2005;[5] (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work in the construction field; yet (5) retained the RFC to perform a wide range of light work. AR 15-19.

Here, Plaintiff argues that the ALJ's findings are erroneous because the ALJ improperly rejected the opinion of Plaintiff's treating physician Kurt Johnson, M.D., wherein Dr. Johnson found Plaintiff to be permanently disabled.

---

[4]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

[5]See fn. 3, *ante*.

**DISCUSSION**

Whereas Plaintiff indicates in the opening brief that the issue before this Court is whether Hepatitis C causes limitations independent of those caused by alcoholism, so as to be relevant to the RFC findings, Plaintiff's entire argument centers on his complaint that the ALJ improperly discounted his treating physician's opinion regarding his ability to work and disability status. In rejecting that opinion, Plaintiff alleges the ALJ did not state specific and legitimate reasons supported by substantial evidence. Hence this Court's discussion focuses on the actual argument tendered by the Plaintiff.

A.     Treating Physician Dr. Johnson

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical

findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985)), or (2) findings based on objective medical tests that the treating physician has not herself considered (*see Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

In this matter, the ALJ relied mainly on the record as a whole, the absence of medical and laboratory reports in support of Dr. Johnson's findings, Plaintiff's own daily activities, and the opinion of consulting physician Dr. Tendall in rejecting the treating physician's opinion. The ALJ's reasons are both specific and legitimate. Additionally, those reasons are supported by substantial evidence in the record.

More specifically, the ALJ stated:

> The undersigned has considered Dr. Johnson's medical source statements, including the April 2006 assessment indicating the claimant was presently limited to standing 1 hour at a time and about 2 hours of standing/walking per 8 hour

> workday and to occasional lifting and carrying up to 10 pounds. However, the medical source statement is given minimal weight in view of the minimal medical signs and laboratory findings contained in either Dr. Johnson's own treatment records or the record viewed as a whole [citation]. Although the claimant may experience some fatigue and weakness and other effects of his hepatitis[,] his own testimony and the record viewed as a whole indicate that his activities of daily living are quite wide ranging and would be consistent with the demands for a full range of "light" exertion, e.g., he performs household chores, cooking, shopping, and bicycling. However, his testimony that he spends most of his days lying down while taking naps during the afternoon are not shown to be the result of his impairment(s) but rather appear to be due to his own chosen lifestyle.

AR 17. The ALJ properly set out a detailed and thorough summary of the facts and conflicting clinical evidence, stated his interpretation thereof, and made findings. *Magallanes v. Bowen*, 881 F.2d at 751.

Dr. Johnson's own treatment records are brief and conclusory, with the exception of an entry dated May 23, 2005. AR 199-200. On that occasion, the physical examination performed by Dr. Johnson revealed that Plaintiff denied a "history of increased fatigue," denied "joint or muscle pain, or back pain," and Plaintiff's liver was not tender or palpable. His gait, balance and motor skills were all normal and intact. Dr. Johnson concluded that Plaintiff's Hepatitis C was asymptomatic. AR 199-200. The related laboratory results show elevated AST and ALT levels, as well as a number of other elevated findings, including cholesterol levels. AR 214.

Plaintiff cites to the elevated AST and ALT levels in support of his position. Yet, Plaintiff's Albumin and Bilirubin levels were within the normal range on July 5, 2005, despite elevated AST and ALT results, and it was noted that Plaintiff's "liver function [was] adequate." AR 174. On a number of other occasions, where the AST and ALT levels were elevated, the Albumin and Bilirubin levels were also within the normal range. AR 142, 151, 174, 203, 210, 212.

Dr. Tendall's report specifically notes that Plaintiff strode "into the examination room with a smile," "moved quite easily," and told Dr. Tendall, "'most of the time I'm okay.'" AR 132. Plaintiff's coordination and gait were normal. AR 133. He could touch his toes. His range of motion was sufficient, with noted limitation in the left shoulder. Plaintiff had "no paravertebral muscle spasms, tenderness, crepitus, effusion, deformities or trigger points." He exhibited "[n]ormal muscle bulk and tone. Strength is 5/5 in upper and lower extremities and

lower extremities including grip strength." AR 133-134.  In short, Dr. Tendall's independent clinical findings are substantial evidence.  *Orn*, 496 F.3d at 632.  Moreover, Dr. Tendall's findings comport with the assessment performed by Dr. Jaituni and later affirmed by Dr. Tambellini.  *Cf.* AR 131-136 to AR 155-162.  *See Tonapetyan v. Haler*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion may constitute substantial evidence because it is based on examiner's independent findings and observations).

Dr. Johnson's treatment notes for the period between his examination of May 23, 2005, and the disability forms he completed on April 25, 2006, fail to even mention the "fatigue" that Dr. Johnson used so readily throughout.  In fact, the period between May 2005 and April 2006 establishes that the reason Plaintiff most often sought treatment from Dr. Johnson related directly to his alcoholism, and, secondarily, to various respiratory ailments.  *See* AR 193, 195, 197-198.

Notably too, on the April 25, 2006,[6] disability forms, Dr. Johnson failed to even complete the portion of the document that sought the "clinical findings and objective signs" that corresponded to the diagnoses or symptoms he identified as causing Plaintiff's disability.  *See* AR 217 at No. 6.

In sum, the ALJ declined to assign Dr. Johnson's opinion controlling weight because it was inconsistent with the record as a whole and was based upon "minimal medical signs and laboratory findings."  *See Orn v. Astrue*, 496 F.3d at 632; *Allen v. Heckler*, 749 F.2d at 579.  The ALJ did not err.

---

[6]The day prior, on April 24, 2006, Plaintiff was seen by Dr. Johnson for treatment of bronchitis following a visit to the emergency room.  He also complained of knee pain and sought a referral to an orthopedist.  Plaintiff also admitted to drinking again.  There was no complaint of fatigue.  AR 196.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Russell D. Bracewell.

IT IS SO ORDERED.

Dated: **April 23, 2009**      **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE